

FILED
JAMES BONINI
CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**   08 MAR 25  AM 11: 30
**EASTERN DIVISION**

SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

**LASMER INDUSTRIES, INC.,** *et al.*,

Plaintiffs,

v.

**DEFENSE SUPPLY CENTER**
**COLUMBUS (DSCC),** *et al.*,

Defendants.

Case No. **2 : 08 cv  286**

Judge   **JUDGE GRAHAM**

Magistrate Judge   **MAGISTRATE JUDGE KING**

### PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
### AND PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65 and Local R. 65.1, Plaintiffs hereby move this Court for a Temporary Restraining Order and Preliminary Injunction against Defendants, Defense Supply Center Columbus (DSCC), Defense Logistics Agency (DLA), M. Susan Chadick, and Karen Spradlin, restraining and enjoining Defendants, and any of their employees, agents or officers, from cancelling, declaring void, or otherwise invalidating, any contracts entered into by Plaintiffs and any agency of the United States, and permitting Plaintiffs to enter into and perform such contracts with agencies of the United States, until such time as this Court has had an opportunity to review Plaintiffs' request for declaratory relief.

The grounds supporting this Motion are more fully set forth in the Complaint, Affidavit of Plaintiff Larry Howard, and accompanying Memorandum in Support.

Respectfully submitted,

/s/ Michael F. Copley (0033796)

**The Copley Law Firm, LLC**
1015 Cole Road

1

Galloway, Ohio 43119
Ph:  (614) 853-3790
Fx:  (614) 467-2000
mcopley@copleylawfirmllc.com

*Trial Attorney for Plaintiffs*

**Co-Counsel**:

Eva C. Gildee (0072685)
*The Law Office of*
**EVA C. GILDEE, Ltd.**
503 S. High St., Suite 205
Columbus, Ohio 43215
Ph: (614) 564-6500
Fx: (614) 564-6555
egildee@gildeelaw.com

Mark E. Landers, Esq. (0026042 )
2071 Aspen Ridge Ct.
Dayton, Ohio 45459
Ph: (937) 439-5411
Mark.Landers@wright.edu

## MEMORANDUM IN SUPPORT

### I. INTRODUCTION

This is an action for injunctive and declaratory relief to prevent Defendants from unilaterally declaring that the previously entered into and performed, and/or current executory, contracts between Lasmer Industries, Inc. and various Government agencies, are illegal, void, or otherwise invalid, without due process of law and absent a challenge to the validity of those contracting actions by the Government agencies which are parties to those contracts. It is also an action to declare the rights of Plaintiffs to enter similar contracts, absent fraud or illegality, in the future, so long as the Government agency entering the contract has duly signed the contract and not challenged its validity.

This motion seeks a temporary restraining order and preliminary injunction to maintain the status quo between Plaintiffs and the Government agencies with which they contract, until this Court has had an opportunity to address the merits of Plaintiffs' claim for declaratory judgment.

### II. STATEMENT OF FACTS

Plaintiff, Lasmer Industries, Inc., is a small family business, in Kerrville, Texas. It manufactures and sells component parts for use in High Mobility Multi-Purpose Wheeled Vehicles (HMMWVs), better known as "HUMVEEs." Plaintiffs, Charles Hickey, Jr., Doris Evelyn Hickey, Larry Howard, William Hickey, Harry (H.M.) Cooper, and James Hickey, are all individual officers and managers of Lasmer Industries, Inc. Affidavit of Larry Howard, ¶ 2.

Defendants, Defense Supply Center Columbus (DSCC) and Defense Logistics Agency (DLA), along with the individual Defendants (employees and agents of DSCC and DLA), are agencies (or agents) of the United States Department of Defense. DSCC is an inventory control

point in Columbus, Ohio through which DLA purchases supplies for the Department of Defense, including the HMMWV parts manufactured and sold by Lasmer.

Defendants DSCC issued an Indefinite Quantity Contract to Lasmer Industries on September 23, 2002, pursuant to which DSCC could order component parts for military HMMWV trucks. Affidavit, Exhibits 3 and 4. The parts included idler arm assemblies and ball joint kits used in the steering suspension system of the HMMWVs. *Id.* According to DSCC, several military customers complained that some of the delivered parts under that contract were defective. *Id.* As a result, on or about January 21, 2005, Defendant DSCC, through its agent and contracting officer, Karen Spradlin, recommended the "debarment" of Defendants from Government contracting. Affidavit, ¶ 3. This was a drastic and unprecedented response to a dispute over defective or non-conforming parts under a Government contract. Lasmer maintains its innocence as to those allegations, but the underlying dispute in that matter is not the subject of this action.

When Plaintiffs' debarment was about to expire at the end of January 2008, Defendants DSCC and DLA proposed and recommended an extension of Plaintiffs' debarment because, during the debarment, Plaintiffs performed a contract they entered into prior to the debarment and provided parts to the military in response to purchase orders issued during the debarment. Affidavit, ¶ ¶ 15-16. As explained below, neither was prohibited.

## A. "Responsible" Government Contractors and "Debarment" Under the Federal Acquisition Regulations.

Before awarding a Government contract to a non-military entity, a Government contracting officer is required to determine whether the contractor is "responsible." 48 C.F.R. § 9.104-1(d). "Debarment" is a process through which certain Government agencies may declare that a Government contractor is presumed not to be "responsible" and must affirmatively

4

"certify" that it is debarred when competing for Government contracts in excess of $100,000. The agency may still award contracts to debarred contractors if the agency believes there to be a "compelling reason" for the particular contracting action. 48 C.F.R. § 9.406-3.

The Federal Acquisition Regulations, 49 C.F.R., subpart 9.4, prescribe the policies and procedures governing the "debarment" of contractors. The allowable "causes" for debarment are listed at 49 C.F.R. § 9.406-2, and include such things as conviction or civil judgment for fraud or a criminal offense in connection with obtaining a public contract; violation of federal or state antitrust statutes related to submission of offers for Government contracts; embezzlement; theft; forgery; or the commission of some "other offense indicating a lack of business integrity or business honesty that seriously and directly affects the present responsibility of the contractor." *See* 49 C.F.R. § 9.406-2. The procedures to be followed for debarring a contractor are set forth in 48 C.F.R. § 9.406-3. The sanction of debarment is to be imposed only in the public interest and for the Government's protection; debarment is not to be imposed as a punishment. 48 C.F.R. § 9.402(b).

Contractors who are suspended or debarred are listed on the General Services Administration's List of Parties Excluded from Federal Procurement or Nonprocurement Programs. *See* 48 C.F.R. § 9.405(a). The General Services Administration (GSA) operates the web-based Excluded Parties List System (EPLS), which is publicly accessible and keyword searchable at www.epls.gov. *See* 48 C.F.R. § 9.404(d).

Suspended or debarred contractors are generally considered not "responsible," but are often solicited to supply specific items after the agency determines that there is a "compelling reason" for the award or subcontract approval. 48 C.F.R. § 9.405(a).

5

In fact, Defendant DSCC recently found Lasmer to be a "responsible" subcontractor to supply ballistic reinforced ambulance doors for immediate procurement and shipment to Iraq, despite Lasmer's current proposal for debarment (see below). Affidavit, ¶ 13.

Each agency of the federal Government is required to "establish appropriate procedures to implement the policies and procedures" of the debarment regulations. *See* 48 C.F.R. § 9.402(d). The regulations state that each agency "must . . . establish procedures to ensure that the agency does not solicit offers from, award contracts to, or consent to subcontracts with contractors whose names are in the EPLS, *except as otherwise provided in [the Regulations]*" (*i.e.*, where the "agency head determines that there is a compelling reason" to continue doing business with that contractor or where the contract is below a minimum purchase threshold). 48 C.F.R. § 9.404(7); 48 C.F.R. § 9.405(a) (emphasis added).

For Government purchases above $100,000 (the "simplified acquisition threshold"), a Government agency is required to solicit competitive bids for contracts (*i.e.*, send out Requests for Proposals and consider responsive bids). For purchases above this threshold, the contracting agent is required to have the proposed contractor certify its status as a "responsible" contractor. The regulations state:

> The contracting officer shall insert the provision at 52.209-5, *Certification Regarding Debarment*, Suspension, Proposed Debarment, and Other Responsibility Matters, *in solicitations where the contract value is expected to exceed the simplified acquisition threshold.*

48 C.F.R. § 9.409(a) (emphasis added).

The certification set forth in 52.209-5 is as follows:

(a)(1) The Offeror certifies, to the best of its knowledge and belief, that –

(i) The Offeror and/or any of its Principals –

6

(A) Are ( ) are not ( ) presently debarred, suspended, proposed for debarment, or declared ineligible for the award of contracts by an Federal agency;

(B) Have ( ) have not ( ), within a three-year period preceding this offer, been convicted of or had a civil judgment rendered against them for: commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, state, or local) contract or subcontract; violation of Federal or state antitrust statutes relating to the submission of offers; or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, or receiving stolen property; and

(C) Are ( ) are not ( ) presently indicated for, or otherwise criminally or civilly charged by a Governmental entity with, commission of any of the offenses enumerated in subdivision (a)(1)(i)(B) of this provision.

(ii) The Offeror has ( ) has not ( ), within a 3-year period preceding this offer, had one or more contracts terminated for default by any Federal agency.

48 C.F.R. § 52.209-5(a)(1).

The bidding contractor is required to fill out the certification, and keep it updated until

the contract is awarded. The Regulation states:

The Offeror shall provide immediate written notice to the Contracting Officer, if at any time *prior to contract award*, the Offeror learns that its certification was erroneous when submitted or has become erroneous by reason of changed condition.

48 C.F.R. § 52.209-5(b) (emphasis added).

The Regulation also makes clear that "[a] certification that any of the items in paragraph

(a) of this provision exists *will not necessarily result in withholding of an award* under this

solicitation," but "will be considered in connection with a determination of the Offeror's

responsibility." 48 C.F.R. § 52.209-5(c) (emphasis added).

7

If a Government agency receives a bid or proposal in response to a competitive request for proposals, the Government contracting officer reviews the EPLS and, if a proposed contractor is on the list, rejects the offer, *unless* the head of the contracting agency provides in writing that there is a "compelling reason" for continuing to do business with that contractor. *See* 48 C.F.R. § 9.405(d). The regulation states:

(1)   After the opening of bids or receipt of proposals, *the contracting officer shall review the EPLS*.

(2)   Bids received from any listed contractor in response to an invitation for bids shall be entered on the abstract of bids, and *rejected unless the agency head determines in writing that there is a compelling reason to consider the bid*.

(3)   Proposals, quotations, or offers received from any listed contractor shall not be evaluated for award or included in the competitive range, nor shall discussions be conducted with a listed offeror during a period of ineligibility, *unless the agency head determines, in writing, that there is a compelling reason to do so*. [… ].

(4)   Immediately prior to award, the contracting officer shall again review the EPLS to ensure that no award is made to a listed contractor.

48 C.F.R. § 9.405(d) (emphasis added).

Where current contracts already exist, the contracting officer need not consider the list, and may continue to perform any contracts already entered into prior to the Notice of Debarment:

(a)   *Notwithstanding the debarment*, suspension, or proposed debarment of a contractor, *agencies may continue contracts or subcontracts in existence at the time the contractor was debarred*, suspended, or proposed for debarment unless the agency head directs otherwise. [. . .].

48 C.F.R. § 9.405-1(a) (emphasis added).

In addition, for contracts below the "simplified acquisition threshold" of $100,000, the contracting agent is not required to competitively bid the contract but may solicit the materials or parts from a single source, without the need for certification regarding the contractor's status as a

"responsible" contractor, and presumably with no need to establish a "compelling reason" for continued use of that contractor. *See* 48 C.F.R. § 13.106-1(b)(1).

For such low threshold purchases, there is also no affirmative duty on the part of the proposed contractor to certify its status as a "responsible" or debarred contractor. *Id; see also Trilon Educ. Corp. v. United States*, 578 F.2d 1356, 1359 (Ct. Cl. 1978) ("absolutely no duty whatsoever devolves upon the bidder voluntarily to proffer such information.").

"The contracting officer's *signing* of a contract *constitutes* a determination that the prospective contractor is responsible with respect to that contract." 48 C.F.R. § 9.105-2(a)(1) (emphasis added); *see also Trilon Educ. Corp. v. United States*, 578 F.2d 1356 (Ct. Cl. 1978) (stating same).

### B.    Plaintiffs' Debarment.

Following DSCC's recommendation to DLA that Plaintiffs be debarred for allegedly unsatisfactory performance under the September 2002 DSCC contract, and following DLA's hearing and decision regarding the same, Plaintiffs were debarred for a period of three years, purportedly effective February 1, 2005.[1]  *See* September 15, 2005 Notice of Debarment, Memorandum of Decision on the Debarment, and Administrative Debarment Report (Affidavit, Exhibit 4); *see also* February 1, 2005 Notice of Proposed Debarment, and Memorandum Concerning the Proposed Debarment (Affidavit, Exhibit 3).

Plaintiffs were notified by certified mail on or about February 7, 2005, of a back-dated February 1, 2005 Notice of Proposed Debarment. *See* Affidavit, ¶ 4.[2]  The Notice was mailed to

---

[1]      Under 48 C.F.R. § 9.406-5(b), the conduct of a debarred company may be imputed to its individual officers, directors, employees, and others "associated with" the company. Pursuant to that regulation, Defendants also debarred each of the individual Plaintiffs in this case who were officers, managers, or otherwise "affiliated" with Lasmer Industries, Inc.

[2]      Under 48 C.F.R. § 9.406-3(c), to be effective, notice must be served by certified mail return receipt requested.

9

Plaintiffs on February 4, 2005. *See* Affidavit, Exhibit 2 (package postmarked February 4, 2005).

The Notice provided that the following seven conditions would apply to Plaintiff's debarment:

1. *The company name, Lasmer Industries, Inc. will be published in the List of Parties Excluded From Federal Procurement and Nonprocurement Programs,* a publication of the General Services Administration that contains the names of contractors debarred, suspended, proposed for debarment, or declared ineligible by any agency of the Federal Government

2. *Offers will not be solicited from, contracts will not be awarded to, existing contracts will not be renewed or otherwise extended for,* and subcontracts requiring Government approval will not be approved for *you by any agency in the executive branch of the Federal Government unless the head of the agency taking the contracting action or a designee states in writing the compelling reason for continued business dealings between you and the agency*.

3. The company may not conduct business with the Federal Government as an *agent or representative of other contractors*, nor may you act as an individual surety for other contractors.

4. No Government contractor may award a *subcontract* equal to or in excess of $25,000 to the company unless there is a compelling reason to do so and the contractor first notifies the contracting officer and further complies with the provisions of FAR 9.405-2(b).

5. No agency in the executive branch shall enter into, renew, or extend *primary or lower-tier covered transactions* in which the company is either a participant or principal, unless the head of the agency grants an exception in writing.

6. The company may not act as an *agent or representative of other participants* in federal assistance programs.

7. The company's *affiliation* with or relationship to any organization doing business with the Government will be carefully examined to determine the impact of those ties on the responsibility of that organization to be a Government contractor or subcontractor.

February 1, 2005 Notice of Proposed Debarment (Affidavit, Exhibit 3).

These conditions mirror the regulations set forth in 48 C.F.R. § 9.405 stating the "effect of listing" on the EPLS.

10

## C. Contracts Performed and Entered Into During the Period of Debarment

In the months prior to the back-dated February 1, 2005 Notice of Proposed Debarment, Lasmer competitively bid for and was awarded a contract with the United States Army Tank and Automotive Command ("TACOM"), Contract Number W56WZV05C0230, for delivery of materials thereunder in the amount of $887,682.54, to begin February 3, 2005. Affidavit, ¶ 6. Following the Notice of Debarment, Lasmer timely delivered conforming goods under the TACOM contract, which goods were accepted and paid for by TACOM without incident. *Id.*, ¶ 7. TACOM has not requested to cancel, rescind, or otherwise invalidate the 2005 TACOM contract. *Id.*

In addition to performing the TACOM contract during the period of debarment, Government agencies (including DSCC) continued to solicit Lasmer to provide component parts for HMMWVs through various forms of solicitation (e-mail requests, purchase orders, etc.). Affidavit, ¶ 8. Those orders were for purchase amounts between $35 and a few thousand dollars, below the "simplified acquisition threshold." *Id.* The list of purchase orders received and fulfilled during the period of debarment is attached as Exhibit 5 to The Affidavit of Larry Howard. Those transactions included orders from such agencies as Altus Air Force Base, the Marine Corps Logistics Base, the General Services Administration (GSA), the Naval Supply Systems Command, the U.S. Army Reserve Center, and TACOM. *Id.*

## D. Defendants' Accusations of "Seriously Improper Conduct."

As a result of Plaintiffs' performance of the 2005 TACOM contract, and its fulfillment of some of the purchase orders listed on Exhibit 5 to the Affidavit of Larry Howard, Defendants proposed an *extension* of Plaintiffs' original period of debarment alleging impropriety on Plaintiffs' part in entering and performing the contracts. Affidavit, ¶ 14. In particular, on or

about January 14, 2008, two weeks before Plaintiffs' original debarment was set to expire, Defendant DSCC, again through its agent and contracting officer, Karen Spradlin, recommended to Defendant DLA that it extend the original debarment of Plaintiffs because Lasmer had "continued to transact business with the Government *[allegedly] in violation of its debarment*." *See* January 14, 2008 Administrative Debarment Report, ¶ 1 (Affidavit, Exhibit 8) (emphasis added).

In her recommendation, Defendant Spradlin failed to mention the recent procurement wherein her own superiors concluded that Lasmer was responsible to provide important ballistic reinforced ambulance doors for shipment to Iraq. Contrary to Spradlin's suggestion that Lasmer lacks business integrity or is a threat to the public, Lasmer successfully delivered all of the parts ordered by the agencies, including the ambulance doors ordered by DSCC, and all were accepted and paid for, without incident. Affidavit, ¶ 13.

On or about January 30, 2008, one day before the original debarment would have expired, Defendant DLA, through its agent M. Susan Chadick, notified Plaintiffs that she had initiated the recommended proceedings to extend Plaintiffs' debarment on the grounds that "during the period of proposed debarment and continuing throughout the term of the debarment, Lasmer conducted business with the Government *in violation of its debarment*," because "during the time Lasmer was debarred[,] it continued to sell items to the Navy, Air Force, Army and other Government entities." *See* January 30, 2008 Notice of Proposed Extension of Debarment, Memorandum Concerning the Proposed Debarment, and Administrative Debarment Report (Affidavit, Exhibit 8).

The January 2008 Notice of Proposed Extension of Debarment further alleged that Plaintiffs' conduct in performing its contract with TACOM, and in selling parts to the Navy, Air

12

Force, Army and other Government entities, during the period of debarment, not only violated the terms of Plaintiffs' debarment, but also "constitute[d] *seriously improper conduct* and demonstrate[d] a lack of business integrity or business *honesty* that seriously and directly affects [Plaintiffs'] present responsibility" as a Government contractor, and provides "cause for an extension of [the] debarment." Memorandum Concerning the Proposed Debarment, at p. 2 (Affidavit, Exhibit 8) (emphasis added). Under the heading "Basis for Proposed Debarment," the Memorandum cited FAR 9.406-2(a)(5), the catchall provision for criminal offenses by contractors. *See* id.; 48 C.F.R 9.406-2(a)(5) ("The debarring official may debar a contractor for a conviction of . . . any other offense indicating a lack of business integrity or business honesty . . . .").

Defendants' accusation that Plaintiffs' performance of the TACOM contract, and provision of supplies to the military at their behest, during the period of debarment, constituted "seriously improper conduct," "demonstrate[d] a lack of business integrity or business honesty," and implicated some unspecified criminal statute, is not only untrue, but puts a cloud of illegality and impropriety over every contract Lasmer entered or performed with DSCC and other Government agencies during the period of debarment. It also puts a cloud of illegality over Plaintiffs' right to enter such contracts in the future. Plaintiffs continue to receive regular requests for HMMWV parts for the military, during this critical time of war, *including requests from DSCC. See*, *e.g.*, February 25, 2008, e-mail request from Shawn Scott, Land Readiness Room, Defense Supply Center Columbus (DSCC) (in which Mr. Scott requests HMMWV parts to satisfy "*urgent Army requirements in Iraq*.") (Affidavit, at Exhibit 6) (emphasis added).

Defendants' allegations of "seriously improper conduct" and dishonesty in Government contracting, under DLA's authority to debar Government contractors, constitute criminal and/or

quasi-criminal allegations. It is Plaintiffs' position that, while DLA may refuse to enter into a specific contract action with Lasmer (although it did not do so in the case of the ambulance doors) due to its debarred status, it may not arbitrarily and capriciously cast doubt and illegality over contracts signed by other agencies in accordance with Government regulations and consistent with DLA's own debarment terms. DLA is without authority to declare any contracts previously entered into by Lasmer with other Government agencies, or future contracts entered into by such agencies with Lasmer, improper, illegal, void *ab initio*, or otherwise invalid, without specifically naming the illegality and without some affirmative request on the part of the contracting agency to concur that its contracting officials engaged in some illegality, such as bribery.

While the propriety of Defendants' extension of Plaintiffs' debarment is the subject of a separate DLA proceeding being conducted pursuant to DLA's authority to debar Government contractors, *see* Affidavit, ¶ 22, the validity and/or enforceability of contracts Lasmer entered into with the Government prior to or during that period are now in question – both Lasmer and the Government agencies with which it contracts are now left unsure how to proceed under existing contracts, and unsure whether they are allowed to enter similar contracts in the immediate future.

This uncertainty must be resolved as soon as possible. The parts which Lasmer manufactures and provides to the military are critical components to the ongoing war effort. *See* Affidavit, Exhibit 6. Given the immediate need for HMMWV parts by the military in Iraq and elsewhere, the potential for further criminal and/or quasi-criminal liability which could be imposed by DLA, and the potential for great financial risk to Lasmer should it refuse to perform existing contracts with the Government (for fear of further retaliation by DLA), or be unable to

14

enter current contracts with the Government for the provision of parts now being requested, a declaration of Plaintiffs' right to enter such contracts is critical.

Until such declaration may be made by this Court, Plaintiffs request a temporary restraining order and preliminary injunction allowing it to perform existing contracts with the Government, and to fulfill current requests for critical supplies to the military effort in Iraq, under contracts duly entered into by the Government despite Plaintiffs' proposed debarment unless DLA can show cause, based upon clear and convincing evidence, that Lasmer engaged in some misrepresentation, fraud or illegality in entering such contracts with other Government agencies.

## III.   LAW AND ARGUMENT

This Court must issue a temporary restraining order and preliminary injunction to preserve the status quo between Plaintiffs and the federal Government in need of military parts. Plaintiffs are likely to succeed on the merits of their claim for declaratory relief; they will suffer irreparable harm without such relief; and the harm Defendants will suffer if the injunction is issued is far outweighed by the harm that will be suffered by Plaintiffs if the injunction is not granted.  Finally, it is in the public interest to maintain the status quo of existing Government contracts until this Court can review the merits of Plaintiffs' claim for declaratory relief.

### A.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIM FOR DECLARATORY JUDGMENT.

Plaintiffs are likely to succeed on the merits of their claim for declaratory judgment which requests a declaration that Plaintiffs have the right to enter into and rely upon contracts duly signed by contracting agents of the federal Government so long as they did not engage in falsely certifying their debarment status or engage in some illegality such as bribery of Government officials.

The federal Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. A district court may enter such relief in an action if it "will serve a useful purpose in clarifying and settling the legal relations in issue, and terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the judicial proceeding." *Daubenmire v. City of Columbus*, 452 FSupp.2d 794 (S.D. Ohio 2006) (footnote omitted) (citing *Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)). Plaintiffs are entitled to such relief here, and thus will succeed on the merits of their claim.

### 1. Plaintiffs did nothing wrong by entering the TACOM contract or performing under that contract during the period of debarment.

As discussed above, for purchases above the Government's "simplified acquisition threshold" of $100,000, as was the TACOM contract, the contracting agency is required to solicit competitive bids for the contract, and include in that solicitation a clause requiring the contractor to certify its status as a responsible contractor. 48 C.F.R. § 9.409(a). The contractor is to maintain the accuracy of that certification until the contract is awarded. 48 C.F.R. § 52.209-5(b).

The TACOM contract was awarded to Lasmer on or before February 3, 2005. Affidavit, ¶ 6. Prior to that date, Lasmer provided an accurate certification as required by the solicitation and contract. That certification remained accurate until the contract was awarded. *Id.* Although Defendants' Notice of Proposed Debarment was dated February 1, 2005, it was not actually issued to Lasmer until February 4, 2005, and was not actually received by Plaintiffs until on or after February 7, 2005. *Id.* ¶ 4.

Therefore, Plaintiffs were not proposed for debarment and were not informed of such proposal until *after* the TACOM contract had been awarded to them. Hence, at no time "prior to

16

contract award" did Lasmer's certification ever become "erroneous," thereby invoking any duty

on Lasmer's part to change its certification or inform TACOM of its proposal for debarment.

Accordingly, there was nothing improper about Lasmer's *entering* the contract with TACOM.

In addition, there was absolutely no obligation on the part of Lasmer, after the award, to

notify TACOM that it had been proposed for debarment. On the contrary, the regulations make

clear that there is no adverse effect upon contracts already in existence prior to the debarment.

The regulations state that:

> (a) ***Notwithstanding the debarment***, suspension, or proposed debarment of a contractor, ***agencies may continue contracts or subcontracts in existence at the time the contractor was debarred***, suspended, or proposed for debarment unless the agency head directs otherwise.

48 C.F.R. § 9.405-1(a) (emphasis added).

Therefore, not only did Lasmer do nothing wrong in *entering* the contract with TACOM,

but it also did nothing wrong by *performing* that contract after the debarment began.

### 2. Plaintiffs Did Nothing Wrong By Supplying Parts To Other Government Agencies In Response To Purchase Orders Received During The Period of Debarment.

The remaining contracts at issue were entered into and performed during the period of

debarment, but were for small purchases by various Government agencies, below the "simplified

acquisition threshold," received by Lasmer via oral or other informal requests for parts (i.e., not

competitively bid). Affidavit, ¶ .

Again, under the Regulations, contracts would not have been awarded to Lasmer absent a

finding of "responsibility" by the contracting agent. 48 C.F.R. § 9.104-1(d); *see also Impresa*

*Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1329 (Fed. Cir. 2001)

("Under the Federal Acquisition Regulation ("FAR") the contract could not be awarded to [the

contractor] unless [the contractor] was found to be 'responsible,' including a finding of 'a satisfactory record of integrity and business ethics.'") (citing 48 CFR § 9.104-1(d)).

Federal Acquisition Regulation 9.105-2(a)(1) makes clear that:

> The contracting officer's *signing* of a contract *constitutes* a determination that the prospective contractor is responsible with respect to that contract.

48 C.F.R. § 9.105-2(a)(1) (emphasis added). *See also Trilon Educ. Corp. v. United States*, 578 F.2d 1356 (Ct. Cl. 1978) (stating same).

As the Court found in *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1329 (Fed. Cir. 2001),

> [T]he contracting officer is not required to explain the basis for his responsibility determination . . . . Rather, *the contracting officer signed the contract thereby making the required determination* according to FAR 9.105-2(a) and in conclusory fashion determined that [the contractor] had "a satisfactory record of performance, integrity, and business ethics."
>
> Contracting officers are "generally given *wide discretion*" in making responsibility determinations and in determining the amount of information that is required to make a responsibility determination. *John C. Grimberg Co. v. United States*, 185 F.3d 1297, 1303 (Fed. Cir. 1999).

*Impresa*, 238 F.3d at 1334-35 (emphasis added). The court continued,

> The cases also establish that, in determining whether to require an explanation [from the contracting officer], *the agency decision is entitled to a presumption of regularity*. *Bowen v. Am. Hosp. Assn.*, 476 U.S. 610, 626-27, 106 S.Ct. 2101, 90 L.Ed.2d 584 (1986); *Motor Vehicle Mfrs. Assn. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 n.9, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983); *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15, 47 S.Ct.1, 71 L.Ed. 131 (1926). *Because of that presumption of regularity, the agency should not be required to provide an explanation unless that presumption has been rebutted by record evidence suggesting that the agency decision is arbitrary and capricious*. [Citation omitted]. The litigant challenging the presumption necessarily bears a heavy burden.

*Impresa*, 238 F.3d at 1338 (emphasis added). *See also Medical Devices of Fall River, Inc. v. United States*, 19 Cl.Ct. 77, 81 (1989) ("Overturning the contracting officer's determination

requires a showing that it is arbitrary, capricious or constitutes an abuse of discretion.") (citing

*Prineville Sawmill Co. v. United States*, 859 F.2d 905 (Fed. Cir. 1988)).

Here, Lasmer was not required to disclose to the contracting officer its status on the

debarred contractor's list:

> Upon reading the application [regulations], we are convinced that
> ***absolutely no duty whatsoever devolves upon the bidder voluntarily to proffer***
> ***such information***. Rather, ***it is unequivocally up to the contracting officer to***
> ***unearth the facts needed to assess the contractor's responsibility***.

*Trilon*, 578 F.2d at 1359 (emphasis added).

In addition, as in *Trilon*, the regulations' "drafters obligingly recommend several sources

for obtaining information concerning prospective contractors." *Id*. ASPR 1-905.3 stated that,

"Information regarding the responsibility of prospective contractors shall be sought among the

following sources: (i) ***The Joint Consolidated List of Debarred, Ineligible, and Suspended***

***Contractors***.'" *Id*. at 1363. Here, Federal Acquisition Regulation 9.105-1 likewise states that:

> (a) Before making a determination of responsibility, the contracting officer ***shall***
> possess or obtain information sufficient to be satisfied that a prospective
> contractor currently meets the applicable standard in 9.104 [regarding
> "responsibility"].
>
> [. . .]
>
> (c)    In making the determination of responsibility (see 9.104-1(c)), ***the***
> ***contracting officer shall consider relevant past performance information*** (see
> subpart 42.15). In addition, the contracting officer ***should use the following***
> ***sources of information*** to support such determinations:
>
>> (1) ***The Excluded Parties List System maintained in accordance***
>> ***with Subpart 9.4***.

48 C.F.R. § 9.105-1 (emphasis added).

Thus, as the Court in *Trilon* held:

> [The contractor] is ***entitled to assume that the contracting officer would***
> ***comply with the directive*** of the [regulation] and make an adequate investigation
> of [the contractor's] responsibility. ***His failure to do so certainly did not obligate***

19

> *[the contractor] to come forward, unprompted, and volunteer the information.*
> The interpretation advocated by defendant would virtually put potential contract
> recipients in the position of being forced to make a self-determination of
> responsibility in order to avoid the risk of rescission if the Government later
> decides the responsibility determination was erroneous. ***The [regulation] does***
> ***not place such a burden on prospective Government contractors***[.]

*Trilon*, 578 F.2d at 1359 (emphasis added).

Moreover, here, the Notice of Debarment informed Lasmer that the Government *would*

*not solicit* Lasmer, *unless* the agency head determined that there was a "compelling reason" to do

so. *See also* 48 C.F.R. § 9.405(a) ("agencies *shall not solicit* offers from, award contracts to, or

consent to subcontracts with these contractors, *unless* the agency head determines that there is a

compelling reason for such action."). The Notice did not *prohibit* Lasmer from *accepting*

solicitations once they were made, or from entering Government contracts once the contracting

agent decided to award it. Thus, when the Government *did* solicit Lasmer to provide the

requested parts, and then awarded it a contract (or simply purchased the materials), it was

completely appropriate and reasonable for Lasmer to expect that the contracting officer had

sought the appropriate internal approvals, if any were necessary, and appropriately awarded the

contract to Lasmer.

As set forth in *Trilon*:

> The criteria to be applied in determining the responsibility of prospective
> contractors are delineated in part 9 of section 1 of the [Procurement Regulations].
> . . . The object of part 9 is to ensure that potential contractors are qualified to
> perform the work or services sought. To this end, awards may be made only to
> 'responsible prospective contractors' after the contracting officer has made an
> affirmative determination in this regard, based on standards enumerated in the
> [Regulations]. [. . .] [Part] 1-904.1 further provides that '*[t]he signing of the*
> *contract by the contracting officer constitutes [an affirmative determination of*
> *responsibility*] . . . ; therefore he must assure himself that the applicable
> requirements of 1-903 are met *before signing the contract or order.*' Finally,
> '[b]efore making a determination of responsibility (see 1-903), the contracting
> officer shall have in his possession or obtain information sufficient to satisfy
> himself that a prospective contractor currently meets the minimum standards set

20

forth in 1-903, *to the extent that such standards are applicable to a specific procurement.*' ASPR 1-905.1(a).

Despite what may appear to be a lengthy list of standards to be applied in evaluating the responsibility of a potential contractor, this court and the Comptroller General of the United States have both *consistently stated* that *the regulations invest in the contracting officer a considerable degree of discretion in arriving at a determination. See, e.g., Deco Industries, Inc. v. United States,* 492 F.2d 1200, 1205-06, 203 Ct.Cl. 566, 577 (1974); *Data Test Corp.,* 54 Comp. Gen. 499 (1974). In *Data Test Corp.,* it was noted that *responsibility "determinations are based in large measure on subjective judgments which are not readily susceptible to reasoned review." Id.* at 501. *Absent allegations of fraud or bad faith, then, affirmative determinations of responsibility generally will not be overturned, and ordinarily protests in this regard will not even be entertained. See Central Metal Products, Inc.,* 54 Comp.Gen. 66 (1974). Although this reasoning usually appears in the context of challenges by unsuccessful bidders, this court has implied that it also is applicable to the recipient of a Government contract who later realizes that the favorable responsibility determination as to him was erroneous. [citation omitted]. Similarly, then, *the Government should also be bound by its own assessment* even if it should later conclude that the initial judgment was incorrect.

*Trilon,* 578 F.2d at 1358 (emphasis added).

Accordingly, even assuming the Government contracting officers were required to make a responsibility determination for these smaller purchases, or were required to find a "compelling reason" to issue the contract to Lasmer, there was nothing "seriously improper" or illegal about Lasmer's acceptance or performance of those contracts once they were awarded. Lasmer was not required to affirmatively seek out the reasons for the contracting officer's determination, if any, of its responsibility, or to acquire proof that the agency head had found a "compelling reason" for issuing the contract to Lasmer. "The [regulation] does not place such a burden on prospective Government contractors[.]" *Trilon,* 578 F.2d at 1359. "Rather, it is unequivocally up to the contracting officer to unearth the facts needed to assess the contractor's responsibility." *Id.* The contractor is "entitled to assume that the contracting officer would comply with the directive[.]" *Id.*

21

3. **Plaintiffs are entitled to rely on the validity of Government contracts duly signed by a Government agency unless and until that Government agency seeks to invalidate that contract for fraud or illegality.**

As the *Trilon* court explained:

> [T]he fact that the contracting officer may have disregarded the directive of [the regulations], to assemble sufficient information about a prospective contractor to make an educated responsibility determination, as required . . . , *does not render the resultant contract a nullity*. [. . .]

> In our view, *the possible negligence of the contracting officer . . . is a matter for internal resolution*, and *does not rise to such a level of impropriety as to require us to punish the other party* [i.e., the contractor].

*Trilon*, 578 F.2d at 1361 (emphasis added).

Put simply, an award of a contract to a suspended or debarred contractor, through administrative oversight or negligence of the contracting officer, *does not render the contract void ab initio*. *See Appeal of Aerospace Support Equipment, Inc.*, ASBCA No. 13579, 1971 WL 1437 (ASBCA), 71-1 BCA P 8904 (May 25, 1971), at p. 4 ("We do not agree with appellant that the award of a contract to a suspended contractor renders the contract void *ab initio*.").

While the contract may be *voidable* at the option of the Government, even a "voidable" contract retains its validity and enforceability unless and until a party seeking to avoid its obligations under the contract takes affirmative steps to do so. *See* Restatement (Second) of Contracts § 7 (1979) (a contract is voidable "where one or more parties have the power, *by a manifestation of election to do so*, to avoid the legal relations created by the contract[.]") (emphasis added); *see also FDIC v. Aetna Casualty & Surety Co.*, 947 F.2d 196, 203 (6th Cir. 1992) (same).

Moreover, a voidable contract may be "ratified" by an affirmative statement of the party, by acceptance of benefits under the contract, or by lapse of a reasonable time for avoidance of the contract. Restatement (Second) of Contracts § 7, comments d and e. Thus, even a

22

"voidable" contract may still be enforced if the party seeking to disavow the contract has accepted benefits under the contract or in some other way acceded to its terms.

Accordingly, here, until the Government agency with whom Lasmer actually contracted takes some affirmative step to disavow the contract, those contracts remain valid and enforceable. As the Court in *Aerospace* correctly held:

> ***Inasmuch as the Government did not disavow the contract it remained viable*** until its termination for default. In this connection we note that the Court of Claims has taken the position with respect to post-award challenges of contract validity, "***If the contracting officer has viewed the award as lawful***, and it is reasonable to take that position under the legislation and regulations, ***the court should normally follow suit***."

*Appeal of Aerospace Support Equipment, Inc.*, ASBCA No. 13579, 1971 WL 1437, 71-1 BCA P 8904 (May 25, 1971) (quoting *John Reiner & Co. v. United States*, 163 Ct.Cl. 381 at 386).

For these reasons, Plaintiffs ask this Court to declare that, absent a disavowance of the contracts by the contracting party, and some proof of illegality or fraud on the part of Lasmer, the individual contracts between Lasmer and the various Government agencies are valid and enforceable. Until such time as that determination or declaration can be made, Plaintiffs ask this court to maintain the status quo between Plaintiffs and those Government agencies regarding said contracts; allow Plaintiffs to perform the contracts without liability; and require the contracting agencies to perform their obligations as well.

## B. PLAINTIFF WILL SUFFER IRREPARABLE HARM WITHOUT AN INJUNCTION.

Plaintiffs will suffer irreparable harm unless this Court issues a temporary restraining order and preliminary injunction maintaining the status quo between Plaintiffs and the federal Government, and allows Plaintiffs to enter into and perform contracts with the federal Government which are duly signed by its contracting officers. Affidavit, ¶ 28.

23

As a Government contractor, manufacturing and selling component parts for military HMMWVs, Plaintiffs' business will be ruined if they are required to cease providing such materials to the federal Government. In addition, if Defendants are permitted to unilaterally declare that Plaintiffs' entering into and performing such contracts constitutes "seriously improper conduct," thereby imparting a cloud of illegality over such contracts, then Plaintiffs put themselves at serious risk of criminal and/or financial liability if they perform such contracts.

## C. THE BALANCE OF THE HARM TO THE PARTIES WEIGHS IN FAVOR OF GRANTING INJUNCTIVE RELIEF.

Unless this Court issues temporary and preliminary orders preventing Defendants from interfering with its right to contract with the federal Government, Plaintiffs will suffer irreparable harm. Defendants, on the other hand, will suffer no harm whatsoever in allowing the various federal agencies to enter contracts with Plaintiffs if they so choose, and to allow Plaintiffs to perform those contracts already entered.

## D. THE PUBLIC INTEREST REQUIRES ISSUANCE OF INJUNCTIVE RELIEF.

The public has a strong interest in the preservation and continuance of Government contracts for military parts, particularly during a time of war. If an injunction is not put in place to maintain the status quo regarding these contracts, it is the public that will suffer the most. If the validity of the subject contracts is not maintained during the pendency of this lawsuit, the Government will not be able to obtain the parts and materials it has contracted with Lasmer to provide, and taxpayers will suffer the increased expense to the Government of obtaining the same parts elsewhere. They may also suffer the cost of remedying any wrongful cancellation or rescission of the contracts by Defendants should the validity and enforceability of the contracts ultimately be declared by this Court.

24

## IV.    CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff's Motion for a Temporary

Restraining order and schedule a Preliminary Injunction hearing.

Respectfully submitted,

/s/ Michael F. Copley (0033796)

**The Copley Law Firm, LLC**
1015 Cole Road
Galloway, Ohio 43119
Ph:  (614) 853-3790
Fx:  (614) 467-2000
mcopley@copleylawfirmllc.com

**Co-Counsel**:

Eva C. Gildee (0072685)
*The Law Office of*
**EVA C. GILDEE, Ltd.**
503 S. High St., Suite 205
Columbus, Ohio 43215
Ph: (614) 564-6500
Fx: (614) 564-6555
egildee@gildeelaw.com

Mark E. Landers, Esq. (0026042 )
2071 Aspen Ridge Ct.
Dayton, Ohio 45459
Ph:  (937) 439-5411
Mark.Landers@wright.edu

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing *Motion for Temporary*

*Restraining Order and Preliminary Injunction* was served **via certified mail**, along with a copy

of the *Complaint for Injunctive Relief*, this 24th day of March, 2008, upon the following:

> Brigadier General
> Patricia E. McQuistion, Commander,
> DEFENSE SUPPLY CENTER COLUMBUS (DSCC)
> 3990 East Broad Street
> Columbus, Ohio 43216-5000
>
> Lt. General Robert T. Vail, Director,
> DEFENSE LOGISTICS AGENCY (DLA)
> 8725 John J. Kingman Road
> Fort Belvoir, Virginia 22060-6221
>
> Karen Spradlin, Contracting Officer,
> DEFENSE SUPPLY CENTER COLUMBUS (DSCC)
> 3990 East Broad Street
> Columbus, Ohio 43216-5000
>
> M. Susan Chadick,
> Special Assistant for Contracting Integrity,
> DEFENSE LOGISTICS AGENCY
> 8725 John J. Kingman Road
> Fort Belvoir, Virginia 22060-6221
>
> United States Attorney for the Southern District Of Ohio
> UNITED STATES ATTORNEY'S OFFICE
> 303 Marconi Boulevard - Suite 200
> Columbus, Oh 43215
>
> Michael B. Mukasey
> ATTORNEY GENERAL OF THE UNITED STATES
> U.S. Department of Justice
> 950 Pennsylvania Avenue, NW
> Washington, Dc 20530-0001

/s/ Michael F. Copley (0033796)