# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

Lasmer Industries, Inc., et al.

      Plaintiffs,

    v.                       Case No. 2:08-cv-0286
                                  JUDGE GRAHAM

Defense Supply Center
Columbus, et al.                 MAGISTRATE JUDGE KING

      Defendants.

## OPINION AND ORDER

**I.**   <u>**BACKGROUND**</u>

Plaintiffs, Lasmer Industries and various officers of the company (collectively "Lasmer"), brought this action against officers, in their official capacity, of the Defense Supply Center Columbus (DSCC) and the Defense Logistics Agency (DLA)(collectively "defendants").  Lasmer complains it was unlawfully debarred from federal contracting under the Federal Acquisition Regulations governing debarment.

As set forth in more detail in this court's June 13, 2008 opinion (Doc. 27), "debarment" is a process through which certain government agencies may declare that a government contractor is presumed not to be responsible.  The Federal Acquisition Regulations governing debarment (48 C.F.R. Part 9.4) and the Defense Federal Acquisition Regulations Supplement governing debarment and suspension procedures (48 C.F.R. Chapter 2, Appendix H, hereinafter "48 C.F.R. Ch.2, App. H"), prescribe the policies and procedures governing debarment of contractors in this case.

Contractors proposed for debarment are immediately placed on the General Services Administration's List of Parties Excluded from Federal Procurement or Nonprocurement Programs (otherwise known as the Excluded Parties List System or "EPLS"). 48 C.F.R. 9.404. Contractors placed on the EPLS are excluded from receiving contracts, and agencies are not to solicit offers from, award contracts to, or consent to subcontracts with these contractors unless the agency head determines there is a compelling reason for such an action. 48 C.F.R. 9.405(a),(b).

Lasmer, a federal contractor, was debarred from federal contracting from February 1, 2005 until January 31, 2008 for shipping nonconforming parts to the government. On January 30, 2008, the DLA notified Lasmer that its period of debarment was being proposed for extension because Lasmer continued to perform various contracts with the government during its period of debarment and was therefore lacking either "business integrity" or "business honesty." See 48 C.F.R. 9.406-2(a)(5). In accordance with the regulations, as of the date of the *proposed* debarment Lasmer was immediately placed on the EPLS. On March 19, 2008, Lasmer submitted a response to the DLA objecting to the proposed extension. On March 25, 2008, Lasmer initiated the instant action and filed a motion for a TRO and preliminary injunction. Lasmer filed its amended complaint on April 7, 2008. The amended complaint alleges that the proposed debarment and the actions of the DLA in conducting the proceedings for debarment were unlawful.

This court dismissed most of the claims in plaintiffs' amended complaint in its June 13, 2008 order (Doc. 27) in large

part because they did not involve sufficiently final agency action under the APA on which this court could rule. Only plaintiffs' facial attack, that the regulations were unconstitutional because they did not contain a time line for completion of the debarment process, involved sufficiently final agency action for this court to consider.

The court found plaintiffs' facial attack on the regulations sufficiently final because as of the moment plaintiffs were *proposed* for debarment under the regulations, they were immediately placed on the EPLS, unable to contract with the government, and their business integrity and business honesty were called into question. Such a listing put plaintiffs' liberty interest at stake. Plaintiffs alleged the regulations on their face violated their right to procedural due process because they effectively jeopardized plaintiffs' liberty without providing a "time line for completion of the debarment process." Amended Complaint, ¶56. Thus, plaintiffs argued, they could remain on the EPLS indefinitely, without receiving a timely hearing or decision. This court concluded that the agency's issuance of the notice of proposed debarment was final agency action sufficient to allow plaintiff to challenge the regulations on their face because plaintiffs' procedural due process claim required no further factual development and involved only a pure legal question.

While the instant litigation has been pending, Lasmer has continued to pursue its administrative remedies before the DLA. On July 29, 2008 the debarring official issued her final decision debarring Lasmer from January 31, 2008 until July 31, 2008, a

period of six months. Thus, as of the date of this opinion, the debarment has expired and plaintiffs are no longer listed on the EPLS. After the debarment expired, plaintiffs filed a separate action in this court, <u>Hickey, Jr. et al v. Chadick et al</u>, No. 2:08-cv-00824, arguing that the regulations were applied to them in an unconstitutional manner and that the decisions of the debarring official in both 2005 and 2008 were arbitrary and capricious. Thus, this case involves plaintiffs' facial challenge to the regulations and <u>Hickey</u> involves plaintiffs' as-applied challenge to the regulations.

Defendants have now filed a motion to dismiss this case which is ripe for decision. Plaintiffs have not responded.

## II. STANDARD OF REVIEW FOR RULE 12(B)(1)

Where a defendant raises the issue of lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss. <u>DXL, Inc. v. Kentucky</u>, 381 F.3d 511, 516 (6th Cir. 2004); <u>Moir v. Greater Cleveland Regional Transit Auth.</u>, 895 F.2d 266, 269 (6th Cir. 1990). Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. <u>United States v. Ritchie</u>, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack on subject matter jurisdiction goes to whether the plaintiff has properly alleged a basis for subject matter jurisdiction, and the trial court takes the allegations of the complaint as true. <u>Ohio Nat'l Life Ins. Co. v. United States</u>, 922 F.2d 320, 325 (6th Cir. 1990). A factual attack is a

challenge to the factual existence of subject matter jurisdiction. No presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. Ritchie, 15 F.3d at 598; Moir, 895 F.2d at 269. Here, defendants are making a facial attack alleging that the complaint is not ripe for this court's review.

**III.** **DISCUSSION**

    A.   RIPENESS

Defendants argue that plaintiffs' facial attack on the regulations must be dismissed because it is not ripe. At the time plaintiffs filed their first complaint, defendants allege it was not clear what portion of the debarment procedures would apply and therefore this court cannot determine what portion of the regulations are applicable to plaintiffs' constitutional challenge. Under the regulations, there are two distinct proceedings which may be involved in the debarment process. The first is the presentation of matters in opposition to the proposed debarment by the contractor. 48 C.F.R. Ch.2, App. H-102. If the debarring official determines there is no dispute of a material fact, "the decision shall be made within 30 working days after receipt of any information and argument submitted by the contractor." 48 C.F.R. § 9.406-3(d)(1). However, this deadline can be extended by the debarring official "for good cause." Id. The second procedure is a fact-finding procedure which occurs only in cases in which the contractor's presentation of matters in opposition raises a genuine dispute over one or more material

facts.   48 C.F.R. Ch.2, App. H-102. If the debarring official determines that there is a dispute of material fact, then a fact-finding hearing will be held "normally . . . within 45 days of the contractor's presentation of matters in opposition."   48 C.F.R. Ch.2, App. H-104(b). This timing provision may also be extended "for good cause." 48 C.F.R. Ch.2, App. H-105.[1] According to defendants, because it was unclear whether the debarring official would find disputed facts or not, this case was not ripe for adjudication because it was not clear as of the date of the complaint what procedural time line would be applicable to plaintiffs.

---

[1]Whether or not plaintiffs actually disputed facts in the 2008 debarment has been a matter of some confusion throughout this litigation. During the administrative procedure, plaintiffs responded to defendants' extension of debarment and requested "a hearing on all disputed questions of fact . . ." (See Doc. 14, Exhibit E, page 5). Moreover, plaintiffs "reserved the right to present mitigating evidence at a hearing." (Doc. 14, Exhibit F, FN 1). Based on these statements, the court's June 13, 2008 opinion (Doc.  27) noted that plaintiffs were alleging there were genuine disputes over material facts. However, as defendants point out, plaintiffs amended complaint and second amended complaint state "Where, as here, the underlying factual basis of debarment is not disputed, the FAR provides no mechanism for prompt decision on the merits of the legal arguments." (Amended Complaint, ¶ 63; Second Amended Complaint, ¶ 54). In a conference held before this court, counsel for plaintiffs stated "This is Mr. Copley. It's the plaintiff's position that there are no disputed facts." (Doc. 34, transcript, p. 13). However, plaintiffs' complaint in the more recently filed <u>Hickey</u> case states plaintiffs did dispute facts in both their 2008 and 2005 debarment. (Case no. 2:08-cv-00824, Complaint, Doc. 2, ¶ 303). For purposes of this motion, this court need not resolve this confusion at this point, but expects clarification from the plaintiffs as to these inconsistencies in all future briefings where the issue is relevant.

The ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." <u>Abbot Laboratories v. Gardner</u>, 387 U.S. 136, 148–49 (1967) (superceded on other grounds as stated in <u>Lubrizol Corp. v. Train</u>, 547 F.2d 310, 315 n.22 (6th Cir. 1976)). Because ripeness is an issue of subject matter jurisdiction, it must be measured as of the date plaintiffs filed their complaint. <u>Democratic Nat'l. Comm. v. Watada</u>, 198 F. Supp. 2d 1193, 1197 (D. Haw. 2002); <u>See</u> <u>Lynch v. Leis</u>, 382 F.3d 642, 647 FN. 4 (6th Cir. 2004)(noting that while a plaintiff may correct a complaint to demonstrate jurisdiction does exist, it may not create federal jurisdiction by amendment). As the Sixth Circuit stated recently in an en banc decision, the ripeness inquiry involves two questions: 1) is the claim fit for judicial decision such that it arises in a concrete factual context and concerns a dispute likely to come to pass? and 2) what is the hardship to the parties of withholding court consideration? <u>Abbot Labs.</u>, 387 U.S. at 149; <u>Warshak v. United States</u>, 532 F.3d 521, 525 (6th Cir. 2008).

### 1.   <u>Fitness for Judicial Decision</u>

As to the first ripeness inquiry, this case is fit for judicial decision because it arises in a concrete factual context and concerns disputes likely to come to pass. Where the impact of the regulations are direct and immediate judicial review is

appropriate. <u>See</u> <u>Abbott Labs.</u>, 387 U.S. at 152-53. As of the date of the original complaint in this case, the regulations were enforced against plaintiffs and plaintiffs were suffering consequences stemming from those regulations. The proposed debarment had an immediate impact on plaintiffs because upon issuance of the notice of proposed debarment, they were immediately placed on the EPLS and their due process rights jeopardized. Thus, the impact of the regulations on plaintiffs was direct and immediate.

Moreover, where further administrative procedures would be futile the court can entertain constitutional questions. (Doc. 27, p. 16). As noted in this court's prior opinion, "[w]hether or not the FAR provides procedures that comport with due process is a purely legal issue that is not facilitated by further factual development in the administrative process." (internal citations omitted).(Doc. 27, p. 16); <u>See also</u> <u>Abbott Labs.</u>, 387 U.S. at 149 (noting that purely legal issues are appropriate for judicial resolution). As stated in this court's prior opinion, the Supreme Court has held that a plaintiff is not required to wait for the administrative remedy before bringing suit when "the question of the adequacy of the administrative remedy. . . [is] for all practical purposes identical with the merits of [the plaintiffs'] lawsuit." <u>Barry v. Barchi</u>, 443 U.S. 55, 63 FN.10 (1979)(quoting <u>Gibson v. Berryhill</u>, 411 U.S. 564, 575 (1973)). Here, whether or not the regulations on their face are unconstitutional raises only purely legal issues for this court to consider.

As for defendants' argument that this case is not ripe until the debarring official decides if there are disputed facts, this

8

court disagrees. According to plaintiffs, part of their reason for objecting to the regulations is that "every . . . timing provision applicable to the debarment process is subject to extension by the debarring official."[2] (Doc. 43, p. 3). Plaintiffs point this court to C.F.R. § H-105 and 48 C.F.R. 9.406-3(d)(1), which allow the debarring official to extend either the fact-finding hearing or the written decision for "good cause." (Doc. 43, p. 13). Thus, plaintiffs are arguing in part that no matter what the debarring official may find with respect to disputed facts, the regulations are unlawful under the due process clause because they allow plaintiffs to be kept on the debarred list indefinitely subject to the debarring officials extensions of time. Thus, it ultimately does not matter what procedural path the debarring official may follow as she allegedly has the ability to indefinitely prolong either procedure.

Defendants point this court to the Sixth Circuit's recent decision in Warshak where the court stated that a case is not ripe if it is dependent upon "'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Warshak, 532 F.3d at 526 quoting Texas v. United States, 523 U.S. 296, 300 (1998) . Warshak, however, involved a plaintiff who alleged a statute unconstitutional under the Fourth Amendment because it allowed the government to search the owner's e-mail

---

[2]Although plaintiffs did not respond to defendants motion to dismiss their second amended complaint, they did respond to a prior motion to dismiss that was mooted. (Doc. 43). This motion explains defendants arguments as to why they believe the regulations are unconstitutional.

without giving the owner prior notice. The <u>Warshak</u> plaintiff had been subjected to the these searches in the past, but was under no current threat that such search would occur against him in the future. <u>Id.</u> This case is unlike <u>Warshak</u> because at the time the complaint was filed plaintiffs were currently on the EPLS and suffering the consequences stemming from that listing. Therefore, whether or not the statute would be enforced against them was not "contingent" as it was in <u>Warshak</u>.

        2.    <u>Hardship to the Plaintiffs</u>

        As for the second part of the ripeness inquiry, as of the date of the complaint, the hardship to the plaintiffs in withholding consideration of this case was considerable. At the time of the filing of the first complaint, Lasmer was subjected to a regulation which they allege could have kept them on the EPLS indefinitely. By simply being proposed for debarment, plaintiffs were listed on the EPLS and were excluded from receiving contracts from the government, and agencies were not to solicit offers from, award contracts to, or consent to subcontracts with plaintiffs unless the agency head made a compelling needs determination. <u>See</u> 48 C.F.R. 9.405(a),(b). Thus, plaintiffs hardship as of the date of the complaint was considerable and plaintiffs should not have had to continue to be subjected to the effects of the EPLS listing if in fact the regulations governing their debarment were unconstitutional on their face.

        Again, this case is distinguishable from <u>Warshak</u>. The plaintiff in <u>Warshak</u> was not subject to any meaningful risk of

10

hardship because he was not faced with a choice of compliance with a burdensome law or a risk of serious penalties. 532 F.3d at 531. Here, to ask plaintiffs to remain on the EPLS if the regulations truly do not provide for a timely decision as alleged is a significant hardship, one that was not present in the Warshak case. To ask plaintiffs to wait to bring their claim that the statute is unconstitutional until the day after the debarment proceeding had concluded is exactly the type of catch 22 plaintiffs are seeking to avoid. According to plaintiffs, that day may never come.

Because plaintiffs argument is essentially that no matter what path the debarring official may take, plaintiffs may be left on the EPLS list indefinitely and thus the regulations are unconstitutional, this court finds plaintiffs facial attack ripe for adjudication.


B.    FACIAL CHALLENGES V. AS-APPLIED CHALLENGES

Although this claim may be ripe for adjudication, judicial restraint counsels this court to refrain from deciding plaintiffs' facial challenge until plaintiffs' as-applied challenge has been decided. As of the date of this order, plaintiffs' debarment has ceased and they are no longer listed on the EPLS. Thus, the hardship they were suffering at the time the complaint was filed is no longer an issue. Moreover, currently pending before this court is a motion for summary judgment in the Hickey case which addresses whether or not defendants' violated plaintiffs' due process rights.

As defendants point out in their motion to dismiss, facial challenges are extremely disfavored in the law and as-applied challenges are the preferred route. <u>Warshak v. United States</u>, 532 F.3d 521, 529 (6th Cir. 2008); <u>Gonzales v. Carhart</u>, 550 U.S. 124, 167-168 (2007); <u>Bd. of Trs. of the State Univ. of N.Y. v. Fox</u>, 492 U.S. 469, 484-85 (1989). "The 'usual judicial practice' is to address an as-applied challenge before a facial challenge because it generally will be more 'efficien[t],' because this sequencing decreases the odds that facial attacks will be addressed 'unnecessarily' and because this approach avoids encouraging 'gratuitous wholesale attacks upon state and federal laws.'" <u>Connection Distrib. Co. v. Holder</u>, 557 F.3d 321, 327-328 (6th Cir. 2009)(quoting <u>Fox</u>, 492 at 484-85). In cases outside the First Amendment context, such as this one, litigation by hypothetical is generally frowned upon, if not barred altogether. <u>Connection Distributing Co.</u>, 557 F.3d at 335.

The complaint in this case alleges that the regulations do not provide for a timely completion of the debarment process (<u>Lasmer</u> Second Amended Complaint, ¶ 51). The complaint pending in the related case, <u>Hickey</u>, alleges that defendants delayed the debarment process (<u>Hickey</u> Complaint, ¶¶ 304-307). Both these allegations relate to whether or not plaintiff was denied due process because the debarment process was not concluded as expeditiously as required.

Because currently pending before this court is plaintiffs' as-applied challenge to the regulations, the court declines to rule on the facial challenge at issue in this case at this time. Therefore, defendants motion to dismiss (Doc. 68) is denied

without prejudice and this case is stayed pending the outcome of
Hickey, Jr. et al v. Chadick et al, No. 2:08-cv-00824. Defendants
may refile their motion to dismiss after a decision is issued in
Hickey.


It is so ORDERED.


                                    s/James L. Graham
                                    JAMES L. GRAHAM
                                    United States District Judge



DATE: September 25, 2009